UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MITCHELL MIRAGLIA<br>an individual<br><br>Plaintiff | * | |
| VERSUS | * | CIVIL ACTION NO. 2:15-cv-04947-JCZ-MBN |
| THE BOARD OF DIRECTORS OF THE<br>LOUISIANA STATE MUSEUM<br><br>Defendant | * | |

******************************************************************************

**MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants Board of Directors of the Louisiana State Museum and Robert Wheat in his official capacity as chief executive of the Louisiana State Museum first respectfully submit that there is a genuine issue of material fact as to whether plaintiff Mitchell Miraglia has standing to bring the claims set forth in the above entitled and numbered cause. Defendants know that the law is that a plaintiff is not required to make the futile gesture of encountering each architectural barrier at a particular facility before suing for injunctive relief as to all barriers related to his disability. *Greer v. Richardson Independent School District*, 752 F.Supp.2d 746, 758 (N.D.Tex. 2010). However, Mr. Miralgia admitted under oath in his sworn deposition testimony in this matter that he did not actually attempt to even enter any of the locations in question, i.e., he, in actuality, did not personally encounter <u>any</u> barrier. (Please see the sworn deposition testimony of Mr. Miraglia, Exhibit "A", at Page 31, Line 7 through Page 39, Line 17). He admits that, other

than him claiming that he did, he has no evidence that he even went there. (Exhibit "A", at Page 40, Line 18 through Page 41, Line 3).

The U.S. Fifth Circuit Court of Appeals set forth the following in *Frame v. City of Arlington*, 657 F.3d 215, 235–36 (5th Cir. 2011):

> "[S]tanding requires a plaintiff seeking injunctive relief to allege 'actual or imminent' and not merely 'conjectural or hypothetical' injury. Mere 'some day' intentions to use a particular sidewalk, 'without any description of concrete plans,' does not support standing. But 'imminence' is an 'elastic concept' that is broad enough to accommodate challenges to at least some sidewalks that a disabled person has not personally encountered. For example, a plaintiff may seek injunctive relief with respect to a soon-to-be-built sidewalk, as long as the plaintiff shows a sufficiently high degree of likelihood that he will be denied the benefits of that sidewalk once it is built. Similarly, a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that an inaccessible sidewalk actually affects his activities in some concrete way. On remand, the district court will be able to apply established standing doctrine to weed out any hypothetical claims. At this point, however, the plaintiffs have alleged in detail how specific inaccessible sidewalks negatively affect their day-to-day lives by forcing them to take longer and more dangerous routes to their destinations. This is sufficient to support their right to sue."

Defendants respectfully submit that Mr. Miraglia has failed to show that the purported barriers in question "[affect] his activities in some concrete way". *Frame,* at 236. He has definitely failed to establish that they "[affect] his day-to-day [life]". *Id.* Defendants submit that, at the very least,

there is still a genuine issue of material fact as to this, which preclude summary judgment. *FRCP Rule 56*.

Defendants Board of Directors of the Louisiana State Museum and Robert Wheat in his official capacity as chief executive of the Louisiana State Museum further respectfully submit that this Honorable Court, by law, could not grant plaintiff's request for declaratory relief against the instant defendants regarding any proposed remediation on the sidewalk in question exterior to the Lower Pontalba Building. Accordingly, plaintiff is not entitled to judgment against the instant defendants as a matter of law as to any proposed remediation on the sidewalk in question (i.e., Items Nos. 1, 4, 9, 10, 13, 15, 18, 20, 22, 24, 28, 31, 33, and 46 in plaintiff's expert Nicholas Heybeck's report, Doc. 44-17). Therefore, as per *FRCP Rule 56*, the instant motion for partial summary judgment as to any proposed remediation on the sidewalk in question (i.e., Items Nos. 1, 4, 9, 10, 13, 15, 18, 20, 22, 24, 28, 31, 33, and 46 in plaintiff's expert Nicholas Heybeck's report, Doc. Doc. 44-17) should be denied, at plaintiff's costs.

Attached and marked as Exhibit "B" is the sworn testimony of defendant Robert Wheat. As Mr. Wheat establishes under oath, said sidewalk is owned by the City of New Orleans, and not by defendant the Louisiana State Museum. (Exhibit "B", at Page 18, Lines 22 through 25; at Exhibit "Wheat 1" attached to said deposition; and at Page 21, Lines 1 through 3). Mr. Wheat verifies that it is the City's responsibility to do any modifications or changes to the sidewalk. (Exhibit "B", at Page 22, Lines 10 through 12). This is verified by the Louisiana courts. Please see, for example, *Houssiere v. Lafayette Insurance Company*, 559 So.2d 903, 904 (La. App. 4th Cir. 1990), and *George v. Western Auto Supply Co., Inc.*, 527 So.2d 428 (La. App. 4th Cir.1988). Defendants' expert Michael Holly also confirmed this in his sworn deposition testimony. (Please see Mr. Holly's sworn deposition testimony, Exhibit "C", at Page 22, Lines 22 through 25). In

fact, even plaintiff's own architecture expert Gordon Sauer confirmed this in his sworn deposition testimony. (Please see Mr. Sauer's sworn deposition testimony, Exhibit "D", at Page 11, Lines 18 through 20; and at Page 25, Lines 7 through 15).

Defendants respectfully submit that the above issue is analogous to the issue which was present in *Westchester Disabled on the Move, Inc. v. County of Westchester*, 346 F.Supp.2d 473 (USDC-S.D.N.Y.). In *Westchester*, the plaintiff was requesting that the court order the defendants to do ADA modifications to things which others – and not those defendants – had ownership/control over. The court, in *Westchester*, elaborated:

> "The currently named Defendants could not provide complete relief sought by Plaintiffs in this case. In their complaint, Plaintiffs clearly request an injunction ordering Defendants to take all steps necessary to ensure that all voting locations in Westchester County are fully compliant with the requirements of the A.D.A. on Election Day. *See* COMPL. ¶¶ D, E. Specifically, Plaintiffs request injunctive relief necessary 'to ensure that the polling places in Westchester County are accessible to physically-disabled and visually-impaired individuals, including providing training for workers at polling places in Westchester County' and 'ensur[ing] that the voting machines in Westchester County are independently-usable by visually-impaired individuals....' *See id.*
>
> First, with respect to polling places, New York law requires that municipalities submit to the Board of Elections, a list of the polling places in each election district in which...any election may be held.' *See* N.Y. E LEC. LAWW § 4–104(1). As Plaintiffs rightly point out, the county Board of Elections is empowered to select an alternative polling place should it determine that a polling place designated by a municipality is 'unsuitable or

unsafe.' *Id.* But even if the Board of Elections could disapprove polling places designated for this year's election, it is entirely unclear that its power to merely *designate* suitable polling places would be adequate to ensure that all polling places used in the upcoming election actually conform with the ADA, even if the Board of Elections were to use ADA requirements as guidelines for its choices.

In their motion papers, Plaintiffs have detailed a long, and likely not exhaustive, list of changes that would have to be made in order to bring the various polling places in Westchester County in full compliance with the ADA. In particular, Plaintiffs note the need for designated handicapped-parking spaces with adequate space and above-ground signage, pathways without excessively steep slopes and having firm level surfaces and curb ramps where walkways meet roadways, entrances with no changes in elevation greater than 1/4 inch, ramps with handrails and landings, entrances with openings wide enough to allow wheelchairs to pass through, door handles that are easy to open, and buildings with interiors with non-slip surfaces. *See* PLAINTIFF'S PI MEMO at 4. Unless facilities meeting all these requirements currently exist all over the County, which seems unlikely, an order from this court requiring the County to choose facilities that meet these requirements is of little use. Rather, it is likely the case that substantial changes and modifications to existing facilities would have to be made, and such changes would be difficult, if not impossible, to make without the cooperation of municipalities, which likely own or otherwise control many of the actual or potential polling places in the County. *See People of New York ex rel. Spitzer v. County of Delaware*, 82 F.Supp.2d 12, 15 (N.D.N.Y.2000) (the argument that townships are responsible for maintaining polling

sites is valid).

With respect to voting machines, New York law empowers Westchester County only to approve purchases of voting machines by local municipalities. *See* N.Y. ELEC. LAW §§ 7–200, 7–203. This court could order Defendants to approve voting machines that conform to the ADA were they to be purchased and submitted for county approval, but the court cannot order them to purchase them for the voting districts in the county. As such, it cannot order them to 'ensure' that such machines are available, installed, and used on Election Day.

Although this court has little doubt that the named defendants in this case could, if they were genuinely committed, make progress toward providing the relief sought by Plaintiffs, they could not accord complete relief in this case. Therefore, Plaintiffs cannot establish a likelihood of success on the merits, and Plaintiffs' motion for a preliminary injunction is DENIED. Furthermore, having found that a judgment issued in the absence of the municipalities would be inadequate, Defendants' motion to dismiss is GRANTED."

*Id.* at 479-480.

The instant defendants respectfully submit that – like the defendant in *Westchester*, supra – they "could not accord complete relief in this case". *Id.* at 480. Similarly, as in *Westchester*, supra, "a judgment issued in the absence of the [municipality, the City of New Orleans] would be inadequate". *Id.* at 480. It is long past the cutoff for the amendment of pleadings in the instant matter. (Doc. 13).

Additionally – even setting aside, for the moment, the issue of the City's ownership of the sidewalk – defendants respectfully submit that plaintiff is also not entitled to the bulk of the relief requested in his motion for partial summary judgment because there are genuine issues of material fact present.

As the United States Supreme Court has held regarding ADA Title II claims such as the above entitled and numbered matter:

> "[I]n no event is the [public] entity required to undertake measures that would…threaten historic preservation interests… §§ 35.150(a)(2), (a)(3)."

*Tennessee v. Lane*, 541 U.S. 509, 532, 124 S.Ct. 1978, 1994, 158 L.Ed. 2d 820 (2004). The same rule of law has been specifically cited by the U.S. Fifth Circuit Court of Appeals. *Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011).

This was further discussed, as follows, in *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 628–29 (D. Md. 2002):

> "D. *Historical Preservation Considerations*
>
> The Department of Justice ('DOJ') has interpreted the ADA's barrier removal and alteration requirements in accordance with the Congressional desire to take into account the national interest in preserving significant historical buildings. The DOJ's Technical Assistance Manual states that, in the context of an historic building, 'barrier removal would not be considered 'readily achievable' if it would threaten or destroy the historic significance of [the] building'. ADA Title III DOJ Technical Assistance Manual § III–4.4200. The ADA's implementing regulations provide that alterations to certain historic facilities need only comply with the ADAAG's accessibility standards 'to the maximum extent feasible'. 28 C.F.R. § 36.405(a); *see* 42 U.S.C. § 12204(c) (setting forth

requirement that regulations pertaining to alterations of qualified historic properties be promulgated). The ADAAG provides specific procedures for determining feasibility, and the regulations state that 'if it is determined ... that it is not feasible to provide physical access to an historic property ... in a manner that will not threaten or destroy the historic significance of the building or facility, alternative methods of access shall be provided'. 28 C.F.R. § 36.405(b); ADAAG § 4.1.7 (definition and requirements of historic properties and procedure for determining feasibility)."

Defendants concede that *Speciner*, supra, involved ADA Title III claims. However, as the court set forth in *Kinney v. Yerusalim*, 812 F. Supp. 547, 551 (E.D. Pa.), *aff'd*, 9 F.3d 1067 (3d Cir. 1993):

"The House Report states "The Committee intends ... that the forms of discrimination prohibited by [Title II] be identical to those set out in applicable provisions of Titles I and III of this legislation" H.Rep. 485(II), 101st Cong.2d Sess. 84 (1990), U.S.Code Cong. & Admin.News 1990, 367, and further, "Title II should be read to incorporate provisions of Titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973 ..." H.Rep. 485(III) 101st Cong.2d Sess. 51 (1990), U.S.Code Cong. & Admin.News 1990, 445, 474.

As the court in *Cole v. Goord*, No. 05 CIV. 2902 (GEL), 2009 WL 2601369, at *8 (S.D.N.Y. Aug. 25, 2009), set forth:

"Addressing the standards for reasonable accommodation under Title II, the Supreme Court wrote that

> [t]he remedy Congress chose is nevertheless a limited one. Recognizing that failure to accommodate persons with disabilities will often have the same

> practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility. But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service. As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways....
>
> [I]n no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.

*Lane*, 541 U.S. at 531–32 (internal citations omitted). The Second Circuit has further noted that whether or not something constitutes a reasonable accommodation is a fact-specific inquiry, and that determinations on the issue must accordingly be made on a case-by-case basis. *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 385 (2d Cir.1996)."

The premises in question constitute a designated historic building. Plaintiff's suggested modification of same would threaten historic preservation interests and thus, by law, are not required under Title II of the ADA or the Rehabilitation Act. *Lane,* 541 U.S. at 531–32 (citing 28 C.F.R. § 35.150(a)(2), (a)(3), (b)(1); *id.* § 35.151).

Attached and marked for identification as Exhibit "E" is the affidavit of expert Michael Holly. As this Honorable Court can see, in his affidavit, Mr. Holly swears under oath that the curriculum attached to and made a part of the exhibit is an accurate representation of his qualifications and expertise, and that the report that is attached to and made a part of the exhibit are some of the expert opinions he has regarding purported violations of ADA standards at the Lower Pontalba Buildings.

In said sworn affidavit (Exhibit "E"), Mr. Holly also establishes that, in his expert opinion, the recommended remediation involving ramps set forth by plaintiff's expert Nicholas Heybeck in his report (Doc. Doc. 44-17) identified as Items Nos. 1, 4, 13, 20, 31, and 33 would threaten the historic preservation interests of the Lower Pontalba Building. The proposed ramps in question, as described by plaintiff's expert Gordon Sauer in his sworn deposition testimony, would run parallel to the front of the building and would protrude out across at least four feet of the width of the sidewalk. (Please see Mr. Sauer's sworn deposition testimony, Exhibit "D", at Page 5, Line 24 through Page 12, Line 11; at Page 15, Line 3 through Page 16, Line 23; and at Page 33, Line 7 through Page 34, Line 8). Mr. Wheat has confirmed under oath that that sidewalk is eight feet wide. (Exhibit "B", at Page 18, Lines 16 through 21). As per Mr. Holly, some of such proposed ramps would also have to have railings if they were as long as they would need to be. It is Mr. Holly's expert opinion that such proposed ramps would not only cover a large part of the original, historic flagstone of the sidewalk. They would also permanently affect the historic character and preservation of the original building facade. (Please see Mr. Holly's sworn deposition testimony in this matter, Exhibit "C", at Page 11, Line 23 through Page 12, Line 5; and at Page 16, Lines 16 through 23). It would also endanger pedestrian traffic on the sidewalk. (Exhibit "E").

In Items Nos. 9, 10, 15, 18, 22, 24, 28, and 46 of his report (Doc. Doc. 44-17), Mr. Heybeck also proposed raising the sidewalk at some of the addresses in question. In his sworn affidavit (Exhibit "E"), Mr. Holly establishes that, in his expert opinion, that would threaten the historic preservation interests of the Lower Pontalba Building, as well. As per Mr. Holly, that, too, would affect the original, historic flagstone of the sidewalk. It would also permanently affect the historic character and preservation of the original building facade. Additionally, it could also affect water drainage into the building. (Please also see Mr. Holly's sworn deposition testimony in this matter, Exhibit "C", at Page 11, Lines 3 through 17).

Plaintiff's own expert Mr. Sauer agreed under oath that – if he and Mr. Holly have differing opinions on whether Mr. Heybeck's suggested changes would affect the historic nature – it is an issue of fact which would need to be determined by the trier of fact. (Exhibit "D", at Page 16, Line 24 through Page 17, Line 24).

Further – with regard to both the ramp and sidewalk raising proposals by Mr. Heybeck (and again setting aside, for the moment, the issue of the City's ownership of the sidewalk) – Mr. Holly details in his report the historic designation of the building in question and explains how the changes proposed could not be performed without the involvement and approval of the agencies who, by law, would have to evaluate and approve such changes. (Exhibit "E"). He references the advisory notes to Section 202.5 which he set forth at Page 5 of his attached report, wherein that necessary evaluation and approval is outlined. (Exhibit "E"). With all due respect, that necessary additional evaluation and approval required by law for any changes along the lines suggested by Mr. Heybeck take us back full circle to the situation in *Westchester*, supra. With regard to both the ramp and sidewalk raising proposals by Mr. Heybeck (and again setting aside, for the moment, the issue of the City's ownership of the sidewalk) – the instant defendants

"could not accord complete relief in this case". *Id.* at 480. Accordingly, again, plaintiff would not be entitled to judgment as a matter of law.

Additionally, in his sworn affidavit (Exhibit "E"), Mr. Holly also cites the fact that the ADA regulations apply only to fixed or built in elements of a building. 28 C.F.R. § 36.405(d). He states that, therefore, in his expert opinion, those ADA requirements do not apply where plaintiff's expert Mr. Heybeck cites things such as movable furniture or display items as causing obstructions (i.e., Items Nos. 6, 14, 19, 26, 30, 35, 47, and 49 in plaintiff's expert Nicholas Heybeck's report, Doc. Doc. 44-17).

Mr. Holly also addresses in his sworn affidavit (Exhibit "E") which of the items in plaintiff's expert Mr. Heybeck's report he feels minimally affect accessibility, are de minimis and do not materially impair the use of the areas in question for their intended purpose or pose any apparent danger to persons with disabilities and, thus, are not in violation of ADA requirements (i.e., Items Nos. 3, 7, 12, 27, 45, and 50 in plaintiff's expert Nicholas Heybeck's report, Doc. Doc. 44-17). "[I]njunctive relief may not be appropriate for violations of ADAAG Standards that are deemed to be de minimis." *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065 (USDC-D.Hawaii), at footnote 26. "Such de minimis violations do not materially impair the use of an area for its intended purpose, nor does it pose any apparent danger to persons with disabilities." *Id.* Mr. Holly also explained in his sworn deposition in this matter how – even with them being de minimis in nature – defendants' lessees could mitigate the conditions in question via alternative methods. (Exhibit "C", at Page 20, Line 7 through Page 21, Line 25). Even for non de minimis conditions, the ADA requires only that existing services and facilities, when viewed in their entirety, be made accessible by a variety of means which need not necessarily

include structural changes. 28 C.F.R. § 35.150. *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1337 (S.D. Cal. 1997), *aff'd*, 172 F.3d 876 (9th Cir. 1999).

Mr. Holly also states in his sworn affidavit (Exhibit “E”) that he challenges Item 17 in Mr. Heybeck’s report (Doc. Doc. 44-17). As Mr. Holly further explained in his sworn deposition testimony, Mr. Heybeck apparently failed to see the height-compliant lowered service counter in question because it was Christmas time when he inspected the premises and there was a small Christmas tree temporarily on said counter. (Exhibit “E”; and Exhibit “C”, at Page 20, Line 24 through Page 21, Line 15). Mr. Holly further explained that that temporary Holiday decoration has long since been removed and the height-compliant lowered service counter is available and in use. (Exhibit “E”; and Exhibit “C”, at Page 20, Line 24 through Page 21, Line 15).

Finally, in his sworn deposition testimony, Mr. Holly questioned whether the “door buzzer systems” suggested by Mr. Heybeck in Items Nos. 2, 5, 11, 16, 21, 23, 25, 29, 32, 34, and 48 in his report (Doc. Doc. 44-17) would threaten the historic preservation interests of the Lower Pontalba Building. (Exhibit “E”; and Exhibit “C”, at Page 6, Line 8 through Page 8, Line 23). As per Mr. Holly, Mr. Heybeck needs to elaborate further on what exactly he is proposing design and function wise for said suggested “door buzzer systems” before it can be reasonably determined if they, too, would threaten the historic preservation interests of the building. (Exhibit “E”; and Exhibit “C”, at Page 6, Line 8 through Page 8, Line 23). In other words, there, too, there are still outstanding genuine issues of material fact which should preclude summary judgment.

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th

Cir.2002), All reasonable inferences are drawn in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001).

Summary judgment is only appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". *FRCP Rule 56*. As the U.S. Fifth Circuit Court of Appeals set forth in *Sims v. Monumental General Insurance Company*, 960 F.2d 478, 479 (5th Cir. 1992):

> "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To that end we must 'review the facts drawing all inferences most favorable to the party opposing the motion.' *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)."

Again, defendants first respectfully submit that – for the reasons set forth above – plaintiff is not entitled to summary judgment against defendants because of the genuine issues of material fact still present as to whether plaintiff Mitchell Miraglia has standing to bring the claims set forth in the above entitled and numbered cause.

Additionally, defendants respectfully submit that – for the reasons set forth above – plaintiff is not entitled to judgment against the instant defendants as a matter of law as to any proposed remediation on the sidewalk in question (i.e., Items Nos. 1, 4, 9, 10, 13, 15, 18, 20, 22, 24, 28, 31, 33, and 46 in plaintiff's expert Nicholas Heybeck's report, Doc. Doc. 44-17). Therefore, as per *FRCP Rule 56*, the instant motion for partial summary judgment as to any proposed remediation on the sidewalk in question (i.e., Items Nos. 1, 4, 9, 10, 13, 15, 18, 20, 22, 24, 28, 31, 33, and 46 in plaintiff's expert Nicholas Heybeck's report, Doc. Doc. 44-17) should be denied, at plaintiff's costs.

Further, again – even setting aside, for the moment, the issue of the City's ownership of the sidewalk – for the reasons set forth above, defendants respectfully submit that plaintiff is also not entitled to summary judgment regarding Items Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 45, 46, 47, 48, 49, and 50 in plaintiff's expert Nicholas Heybeck's report (Doc. Doc. 44-17) because there are genuine issues of material fact present which, by law, preclude same. *FRCP Rule 56*.

Respectfully Submitted,

JEFF LANDRY
Attorney General

BY: *s/ Christopher Moody*__________________
Christopher Moody
Special Assistant Attorney General
MOODY LAW FIRM
Christopher Moody, LA Bar Roll No. 9594
Albert D. Giraud, LA Bar Roll No. 18911
1250 SW Railroad Avenue, Suite 170
Hammond, Louisiana 70403
Ph.: (985) 542-1351/Fax: (985) 542-1354

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing same in the U.S. Mail, postage prepaid, or by Electronic Notice.

Hammond, Louisiana, this 15th day of August, 2016.

*s/Christopher Moody*
Christopher Moody